UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:15-cr-00019-JMS-CMM |
| ) | |
| JUSTIN SWAIN, ) -06 | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Justin Swain's Motion for Compassionate Release, dkts. [765] and [775], filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Mr. Swain seeks immediate release and the reduction of his sentence to time served with conditions of supervised release that do not exceed the unserved portion of his original term of imprisonment. For the reasons explained below, Mr. Swain's motion is **DENIED**.

### I.
### BACKGROUND

In 2017, a jury convicted Defendant Justin Swain of one count of conspiracy to distribute 500 grams or more of a methamphetamine mixture. Dkt. 520. He was sentenced to 300 months of imprisonment and 10 years of supervised release. Dkt. 603. In 2019, he was resentenced, and his sentence was reduced to 240 months of imprisonment and 5 years of supervised release. Dkt. 748.

Before Mr. Swain was resentenced, a presentence investigation report ("PSR") was prepared. Dkt. 743. The PSR describes the offense conduct at issue in this case. It states that Mr. Swain and others worked together to distribute methamphetamine in the area of Vincennes, Indiana. *Id.* at 6. Mr. Swain maintained a "stash location" in Lawrenceville, Illinois. *Id.* A co-

defendant fronted methamphetamine to Mr. Swain, who then distributed that methamphetamine. *Id.* The co-defendant received approximately 63.75 kilograms (140 pounds) of methamphetamine during the operation of the drug-distributing organization and stored it all with Mr. Swain. *Id.* Mr. Swain distributed almost all of the methamphetamine that the co-defendant received from the drug-distributing organization. *Id.* For purposes of sentencing, Mr. Swain was considered accountable for the distribution of over 45 kilograms (99.2 pounds) of methamphetamine. *Id.*

In August 2015, the Drug Enforcement Agency ("DEA") intercepted a call between Mr. Swain and a co-defendant. *Id.* The co-defendant asked Mr. Swain, "You want an SKS, AK, or whatever . . . it is? Seven point six-two's; it ain't hot or nothing . . . brand new." *Id.* After asking whether the weapon was wood or synthetic, Mr. Swain said, "Yeah, get it and, uh . . . we'll turn it." *Id.* He added, "You'll get more now out of it buddy . . . Yeah, trust me, I'll make you something right . . . pretty quick, so . . . yeah, yeah, so go ahead and get it." *Id.*

In October 2015, the DEA searched Mr. Swain's stash location. *Id.* They found two digital scales, packaging material, and one round of ammunition on the nightstand beside a bed in the residence. *Id.* In a locked closet, they found safes containing 35 firearms; they also found approximately 5,783 rounds of ammunition in the closet. *Id.* One of the firearms had been stolen from a residence in Lawrenceville two years earlier. *Id.*

The PSR shows that Mr. Swain had 5 previous adult misdemeanor convictions from 1996 to 2000, including a misdemeanor domestic battery conviction in 2000 that came after Mr. Swain punched a household member repeatedly in the face and choked her. *Id.* at 8–9.[1] Mr. Swain

---

[1] Mr. Swain was also charged with one count of felony aggravated battery, but that charge was dismissed. Dkt. 743 at 9.

2

committed that offense while on probation for another conviction. *Id.* In 2009, Mr. Swain was convicted of the misdemeanor offense of driving under the influence. *Id.*

The PSR shows that Mr. Swain has a history of substance abuse. *Id.* at 13. It also shows that he was employed by a single company for approximately 9-and-a-half years, although the company considered him not eligible for rehire because he was terminated after three days of "no call/no show." *Id.* at 14.

At the time of Mr. Swain's resentencing, the mandatory minimum term of imprisonment was 10 years. Dkt. 743 at 15 (citing 21 U.S.C. § 841(b)(1)(A)). Based on a total offense level of 42 and a criminal history category of I, his guideline imprisonment range was 360 months to life. *Id.* Under 21 U.S.C. § 841(b)(1)(A), the Court was required to impose a term of supervised release of at least 5 years. *Id.* The guideline term of supervised release was 5 years. *Id.*(citing U.S.S.G. § 5D.1.2(c)). As explained, the Court imposed a 240-month term of imprisonment and 5 years of supervised release. Dkt. 748.

Mr. Swain is 40 years old and is now incarcerated at Federal Correctional Institution Forrest City Low ("FCI Forrest City Low") in Forrest City, Arkansas. His current release date is projected to be October 29, 2032.

In the memorandum in support of Mr. Swain's motion, Mr. Swain's counsel represented that Mr. Swain has a history of cardiovascular concerns, specifically a reported heart attack at age 25. Dkt. 775 at 3. Counsel did not file any documentation supporting the claimed cardiovascular concerns, but the PSR shows that Mr. Swain told the probation officer who prepared the report that he had a heart attack when he was 25 and was treated at a hospital. Dkt. 743 at 12. The probation officer asked for verification from the hospital but did not receive any. *Id.* Mr. Swain's

mother also attempted to obtain medical records to no avail, but she confirmed that Mr. Swain suffered a heart attack. *Id.* Mr. Swain has not submitted any evidence that he has continued to experience heart problems over the 15 years following his heart attack. BOP medical records show normal cardiovascular functioning since his incarceration and do not reflect any treatment for, or complaints of, heart problems. *See generally* dkts. 778-1 through 778-4.

Mr. Swain's counsel also reported that Mr. Swain has skin allergies that can lead to MRSA if untreated. Dkt. 775 at 3. She attached a medical record from 2015 showing that Mr. Swain had contact dermatitis related to his exposure to certain allergens at home and work. Dkt. 775-2. The record also shows that Mr. Swain was "superinfected" with MSSA (methicillin-sensitive Staphylococcus aureus) at a previous visit but that his condition improved dramatically after taking medication. *Id.* Counsel did not submit any other records showing that Mr. Swain has contracted MRSA or MSSA since that time. BOP medical records also reflect that Mr. Swain suffers from a skin condition that causes rashes and has received consistent treatment for that condition during his incarceration; they do not show that he has contracted MRSA or MSSA during his incarceration. *See generally* dkts. 778-1 through 778-4.

Mr. Swain's counsel noted that Mr. Swain has a history of obesity. Dkt. 775 at 3. The PSR shows that Mr. Swain is 6 feet, 5 inches tall, dkt. 743 at 12, and counsel represents that Mr. Swain currently weighs 305 pounds, dkt. 780 at 3, which translates to a Body Mass Index (BMI) of 36.2.[2]

---

[2] *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited June 2, 2020).

4

FCI Forrest City Low has experienced a major outbreak of COVID-19. As of June 2, 2020, the BOP's website shows that 464 inmates have tested positive.[3] On May 14, 2020, Mr. Swain was tested for COVID-19. That test returned a positive result. Dkt. 778-4 at 25–28. BOP medical records show that, since that time, Mr. Swain has remained asymptomatic and has not run a fever. *See id.* at 13 (May 25, 2020 note that "[i]nmate is asymptomatic" and May 21, 2020 note that "[i]nmate denies cough, [shortness of breath], muscle pain, fatigue sore throat, [headache], new loss of taste and smell, and/or chills."). Mr. Swain's counsel represents, however, that Mr. Swain told her that he has had "a consistent cough for several weeks now and has had a fluctuating temperature." Dkt. 780 at 3. Mr. Swain also reports that he is housed in an open dorm-like cell with multiple other inmates, all of whom have tested positive for COVID-19, many of whom have been coughing, and some of whom have been vomiting. *Id.* He reports that the BOP provided inmates with masks made of bed sheets, but those masks do not provide any real protection. *Id.* He reports that his skin condition has deteriorated in the last few weeks and that he now has "large swaths of rashes with crusting and flaking of skin." *Id.*

On April 20, 2020, Mr. Swain filed a pro se motion for compassionate release with this Court. Dkt. 765. The Court appointed present counsel to this case effective April 24, 2020. Dkt. 769. Mr. Swain filed a Memorandum in support of his Motion with the Court. Dkt. 775. The United States responded on June 1, 2020, dkt. 779, and Mr. Swain replied on June 2, 2020, dkt. 780.

## II.
### DISCUSSION

Mr. Swain argues that the Court should order his immediate release because his preexisting medical conditions and positive COVID-19 test amount to an extraordinary and compelling reason

---

[3] *See* https://www.bop.gov/coronavirus/ (last visited June 2, 2020).

for release. In addition, he argues that he is not a danger to the community and that the sentencing factors in 18 U.S.C. § 3553(a) favor his release. In response, the Government argues that Mr. Swain he has not shown symptoms of COVID-19 and that his underlying health conditions do not place him at an increased risk of severe COVID-19 symptoms. The Government also argues that Mr. Swain is a danger to the community and that the § 3553(a) factors do not favor his release. *Id.*

18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Mr. Swain represents that he submitted written requests for a reduction in sentence to his custodian on March 20, 2020; April 10, 2020; and April 15, 2020. Dkt. 775 at 2. Because 30 days have passed since he submitted those requests, he contends that he has exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A). *Id.* The Government does not contest Mr. Swain's argument that he has exhausted his administrative remedies. Dkt. 779 at 2.[4] Accordingly, the merits of the motion for compassionate release are ripe for the Court's consideration.

---

[4] The exhaustion requirement is not jurisdictional and can be waived by the Government. *See United States v. Jackson*, No. 2:15-cr-00013-JMS-CMM-1, Dkt. 137 (S.D. Ind. Apr. 28, 2020); *cf. United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015) (holding that criteria for granting sentence reduction in §

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[5] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Mr. Street is "a danger to the safety of any other person or to the

---

3582(c)(2) are not jurisdictional). Thus, even if Mr. Swain has not exhausted his administrative remedies, the Court considers the United States' concession to be a waiver of any further exhaustion.

[5]Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### A. Extraordinary and Compelling Circumstances

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[6] *Id.*, Application Note 1(D).

---

[6] The catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act to reflect the fact that defendants can now file motions directly in district court. "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). Such courts conclude that they have the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." *Id.* at *6; *see also United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Swain's motion would be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

Mr. Swain does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The Court concludes that it does not. Mr. Swain reports that he had a heart attack 15 years ago (when he was 25), and his medical records show that he has a skin condition and is obese. Thus, he contends, he is at a higher risk of developing severe symptoms now that he has contracted COVID-19. Dkt. 775 at 6–8; dkt. 780 at 3–4. The CDC does not recognize skin conditions similar to Mr. Swain's as presenting a risk for severe COVID-19 symptoms.[7] Mr. Swain is correct that the CDC has recognized that people suffering from "serious heart conditions," including "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension," may be at higher risk from severe illness from COVID-19.[8] But there is no evidence that Mr. Swain suffers from such a "serious heart condition." Even crediting his claim that he had a heart attack 15 years ago, there is no evidence that he is currently suffering from a serious heart condition or that he has had any heart trouble since the heart attack. Likewise, the CDC has recognized that "severe obesity," which is defined as a BMI of 40 or above, puts people at higher risk for complications from COVID-19.[9] But Mr. Swain's BMI is 36.2, and he is not severely obese. Thus, he does not suffer from any conditions that put him at a higher risk of suffering from severe COVID-19 symptoms.

---

[7]*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June, 2020).

[8]*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions (last visited June 2, 2020).

[9]*See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#severe-obesity (last visited June 2, 2020).

The Court recognizes that Mr. Swain is incarcerated at a "hotspot" for COVID-19 infections and that he has been infected with COVID-19 since at least May 14, 2020 (the date of his test). But—even crediting his claim to be suffering from a persistent cough and a "fluctuating" temperature—he has not suffered any severe symptoms in more than two-and-a-half weeks. This history also cuts against his claim that he is at a high risk of suffering severe COVID-19 symptoms.

On the current record, the Court concludes that Mr. Swain has not shown that extraordinary and compelling reasons warrant a sentence reduction. Thus, his motion must be denied.

### B. Danger to Any Other Person or to the Community

Even if Mr. Swain had presented extraordinary and compelling reasons warranting a sentence reduction, the Court would deny his motion because he presents a danger to the community. The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) is the provision outlining the factors the Court must consider in determining whether a defendant should be detained pending trial. In turn, § 3142(g) provides:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug

>> or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Government argues that releasing Mr. Swain poses a danger to the community, and the Court agrees. Notably Magistrate Judge McKee applied the § 3142(g) factors in 2015 and ordered Mr. Swain detained pending trial, finding clear and convincing evidence that Mr. Swain was a danger to the community. Dkt. 65. Although Mr. Swain has since had a felony conviction vacated, none of the other facts underlying Judge McKee's determination have changed—including the nature and circumstances of the offense and the history and circumstances of the defendant. Although Mr. Swain claims that his 1692 days (about 4.6 years) of incarceration "can be nothing other than a life-changing experience," dkt. 780 at 2, he offers no evidence that he has been rehabilitated or taken any steps to address the underlying reasons for his offense.

Moreover, the Court has considered the § 3142(g) factors anew, and it concludes that Mr. Swain is a danger to the community. As explained, a jury convicted Mr. Swain of a serious drug offense, indicating that the evidence against him was strong. He participated in an organization that distributed 140 pounds of methamphetamine to the Vincennes, Indiana, area, and he was deemed personally responsible for distributing almost 100 pounds of methamphetamine. Mr. Swain characterizes his crime as "a non-violent, victimless offense," dkt. 775 at 3, but the fact that his crime was nonviolent does not mean that he did not harm the community or that he would not pose a danger if released. Mr. Swain knowingly distributed large amounts of a highly-addictive

11

drug, thereby causing harm to many families in southwest Indiana. Moreover, Mr. Swain possessed 35 firearms (one of which was stolen) and almost 6,000 rounds of ammunition—emphasizing the danger associated with his drug-dealing activities. Taken together, the quantity of drugs Mr. Swain distributed, the number of firearms he possessed, and the amount of ammunition he accumulated convince the Court that Mr. Swain was and remains a danger to the community. He has given the Court no reason to believe that he would not return to his criminal activity if released.

The Court recognizes that Mr. Swain had a heart attack at age 25, has a skin condition, and is obese, but those conditions did not prevent him from committing the crime of which he was convicted in this case, and his health has not deteriorated significantly since his incarceration. Mr. Swain also currently has some COVID-19 symptoms, but they are not severe and would not prevent him from returning to his prior criminal activity. In short, Mr. Swain's personal characteristics do not convince the Court that he is no longer a danger to the community.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Swain would pose a danger to the community if he were released, even if the Court imposed terms of supervision. Thus, his motion for compassionate release must be denied.

### III.
### CONCLUSION

For the reasons stated above, Mr. Swain's Motion for Compassionate Release, dkt. [765], is **denied**.

**IT IS SO ORDERED.**

Date: 6/3/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel